IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **SERGEI RUKAVITSYN, ET AL.,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:12-cv-02253-JAR |
| | ) | |
| **SOKOLOV DENTAL** | ) | |
| **LABORATORIES, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Plaintiffs Sergei Rukavitsyn, Yuriy Usenko, and Roman Isakov, individually and on behalf of all those similarly situated, filed this removal action against Defendant Sokolov Dental Laboratories, Inc., alleging claims under the Fair Labor Standards Act ("FLSA"),[1] the Kansas Wage Payment Act ("KWPA"),[2] and Kansas common law claims for breach of contract and quantum meruit. This matter comes before the Court on Defendant's Motion to Dismiss Counts II, III, and IV of Plaintiffs' Complaint (Doc. 8) pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated below, the Court denies Defendant's motion on Count II, the KWPA claim, and grants the motion on Counts III and IV, the common law claims.

## I.    Factual Background

The following facts are alleged in Plaintiffs' Petition (Doc. 4-2) and taken in the light most favorable to Plaintiffs. Prior to this action, Plaintiffs were employed as dental lab technicians for Defendant, a Kansas corporation subject to the provisions of the FLSA. During

---

[1] 29 U.S.C. §§ 201–219.

[2] K.S.A. § 44-313.

their employment for Defendant, Plaintiffs regularly performed work in excess of forty hours per week, and, in addition, sometimes performed "off-the-clock" work for which they did not receive an hourly wage.  Though Defendant knew or should have known Plaintiffs were performing such work and that such work was compensable under the FLSA, Defendant did not compensate Plaintiffs for their off-the-clock work and refused to compensate Plaintiffs at one and one-half times their regular rate of pay for hours worked in excess of forty hours per week. Plaintiffs do not specify their regular rate of pay, but claim that they entered into employment agreements under which they were to be paid at an hourly rate, and that Defendant's advertisements in Russian newspapers indicate a compensation rate of ten dollars per hour for dental lab technicians.  Further, Plaintiffs assert that their regular rate of pay includes non-discretionary bonus payments for meeting and exceeding certain production goals.

Plaintiffs allege in Count I of their Petition that Defendant's refusal to compensate Plaintiffs at the proper overtime rate constitutes a willful violation of the FLSA, 29 U.S.C. § 207(a)(1).  In addition, Plaintiffs contend that Defendant failed to pay "all wages due" to Plaintiffs under the KWPA, K.S.A. § 44-314 (Count II); breached its employment agreements to pay Plaintiffs for all time worked on Defendant's behalf (Count III); and accepted the benefit of Plaintiffs' labor without full compensation, such that it would be inequitable for Defendant to retain the benefit without payment of its value (Count IV).  Defendant moves to dismiss Plaintiffs' KWPA, breach of contract, and quantum meruit claims for failure to state claims for which relief may be granted.

## II.      Rule 12(b)(6) Standard

To survive a motion to dismiss, a complaint must present factual allegations, assumed to

be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[3]   Under this standard, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[4]   As the Supreme Court recently explained, "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action' will not do.  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[5]   Additionally, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[6]

## III.  Discussion

### A.  KWPA Claim

The KWPA states that "[e]very employer shall pay all wages due to the employees of the employer at least once during each calendar month."[7]   The statute defines "wages" as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis less authorized withholding and deductions."[8]   When an employer willfully fails to pay an employee his or her "wages due," the employer is

---

[3]*Bell Atl. Corp v. Twombly*, 550 U.S 544, 554 (2007).

[4]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in the original).

[5]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).

[6]*Id*.

[7]K.S.A. § 44-314(a).

[8]K.S.A. § 44-313(c).

liable for both the wages due and a penalty in an amount up to 100% of the unpaid wages.[9]  "The

KWPA, then, does not provide plaintiffs with any substantive rights, but simply provides a

mechanism for plaintiffs to recover wages due.  In such circumstances, plaintiffs must establish

independently that they are entitled to the wages that they seek."[10]  While there are several ways

for plaintiffs to independently establish an amount of "wages due" under the KWPA, courts in

the District of Kansas have held that plaintiffs may rely on the FLSA — which requires

employees to be paid at an overtime rate of "one and one-half times [their] regular rate" of pay[11]

— to form the legal basis for KWPA claims.[12]

        Defendant's motion to dismiss first argues that Plaintiffs do not allege a withholding of

"wages due" under the KWPA.  In Defendant's view, the KWPA distinguishes between wage

withholdings and improper wage calculations.  According to Defendant, "The plain language of

the Act makes clear that it seeks to protect employees from wrongful deductions to, and

withholding of, earned wages"; the KWPA is not "a vehicle for challenging the substantive

validity or fairness of an underlying earned wage *calculation*."[13]   Because "Plaintiffs do not

contend that their wages were withheld, but rather, contend that the FLSA required that their

wages should have been *higher*," Defendant urges that Plaintiffs do not state a claim for relief

---

[9]K.S.A. § 44-315(b).

[10]*Garcia v. Tyson Foods, Inc.*, 766 F. Supp. 2d 1167, 1187 (D. Kan. 2011).

[11]29 U.S.C. § 207(a)(1).

[12]*See Garcia*, 766 F. Supp. 2d at 1187; *see also Tarcha v. Rockhurst Continuing Educ. Ctr.*, No. 11-2487-KHV, 2012 WL 1998782, at *4 (D. Kan. June 4, 2012) ("The Court finds that plaintiffs may rely on the FLSA as the legal basis for a KWPA claim."); *Veale v. Sprint Corp.*, No. Civ. A. 95-2379-GTV, 1997 WL 49114, at *2 n.1 (D. Kan. Feb. 3, 1997) ("Both the FLSA and [K.S.A. § 44-1201 *et seq.*] govern the determination of whether defendant 'paid all wages due' to plaintiff.").

[13]*Id.* (emphasis in the original).

4

under the KWPA.[14]

The Court disagrees.  Plaintiffs' Petition makes clear that they seek remuneration for compensation Defendant is required by law to pay, but has not paid.[15]  Such unpaid compensation is a subset of "all wages due" to Plaintiffs under the KWPA.[16]  The statute does not require the Court to draw a distinction between withheld wages and wages that are not paid as a result of an unlawful overtime wage calculation; when an employer wrongfully fails to pay any amount of compensation to which its employees are entitled, the employer withholds wages in violation of the KWPA's simple and unambiguous requirement that employees be paid "*all* wages*" owed them.[17]

Accordingly, federal district courts applying Kansas law have allowed KWPA claims for overtime wages in cases similar to this one.[18]  In *Tarcha v. Rockhurst Continuing Education Center*, the court allowed the plaintiffs to sue for overtime wages due under the KWPA, even though the claim necessarily involved an overtime wage calculation determined by the FLSA.[19] The court credited the argument that "employers are to pay 'all wages' regardless of how those

---

[14]*Id.* (emphasis added).

[15]Doc. 4-2 ¶¶ 9-15, 56.  It is worth noting that Plaintiffs not only allege that their overtime wages should have been higher, but also allege that Defendant refused to pay "off-the-clock" straight-time wages.  Doc. 4-2 ¶¶ 11, 14.  The latter allegation does not challenge the validity of a wage calculation, but asserts that Defendant wrongfully withheld wages for hours worked at Plaintiffs' regular pay rate.  Thus, Plaintiffs need not rely on overtime allowed under the FLSA to state their KWPA claim.  Nevertheless, because the Court finds that failure to pay the proper overtime rate may result in wrongful withholding of "wages due" under the KWPA, the Court primarily deals with Defendant's argument regarding overtime wage calculations.

[16]*See Tarcha*, 2012 WL 1998782, at *4; *Veale*, 1997 WL 49114, at *2.

[17]*See Tarcha*, 2012 WL 1998782, at *4 (emphasis added) (internal quotation marks omitted).

[18]*See id.* at *3-4; *Veale*, 1997 WL 49114, at *2.

[19]*See* 2012 WL 1998782, at *3-4.

wages are calculated."[20]  Likewise, the court in *Veale v. Sprint Corp.* rejected the argument that a plaintiff cannot bring an action under the KWPA for overtime compensation based on overtime wages determined by the FLSA.[21]

Defendant's argument that the calculation of an unlawfully low overtime wage rate does not result in a withholding of "wages due" relies on the assumption that employees have not *earned* wages at the higher overtime rate required by law; in other words, that further wages are not *due*.  Indeed, Defendant contends that Plaintiffs agreed to be paid a salary of 400 dollars per week, and that Plaintiffs were not entitled to wages beyond that, regardless of the number of hours worked.[22]  Defendant's assumption, however, is belied by the Kansas Supreme Court's decision in *Elkins v. Showcase, Inc.*

*Elkins* involved a tip pooling system for compensating employees of the defendant restaurant.[23]  The tip pooling system was found to violate a provision of the FLSA because the system diverted too much of the plaintiff's tips into the tip pool.[24]  When the plaintiff sued to recover wages due under the KWPA, the defendant argued that the plaintiff had agreed to the tip pooling system in place, and that the plaintiff's wages were not deemed to be "earned" until the

---

[20]*See id.* at *4.

[21]*See* 1997 WL 49114, at *2.

[22]*See* Doc. 8 at 4.  Here, Defendant advances a factual contention regarding an oral employment agreement with Plaintiffs that the Court must disregard at this stage.  The Court may only assess the factual contentions contained in the complaint when deciding a motion to dismiss, and must draw all reasonable inferences in favor of the plaintiff.  *See Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).  The Court addresses this contention only to illustrate a point made by the court in *Elkins v. Showcase, Inc.*, 704 P.2d 977, 986 (Kan. 1985).

[23]*Elkins*, 704 P.2d at 979-80.

[24]*See id.* at 986, 988.

plaintiff had fulfilled his conditions under the employment agreement.[25]  Thus, the defendant

viewed disbursement of the plaintiff's wages in accordance with the employment agreement as a

"condition precedent" to plaintiff's entitlement to his wages; because the plaintiff's wages were

not "earned" until they were paid out, the defendant could not be deemed to have withheld

wages due.[26]

        The court rejected this argument, reasoning that the tip pooling system was subject to the

FLSA, under which the plaintiff acquired an interest in the tip pool as soon as he received tips

that would be diverted into the pool.  The plaintiff therefore earned a right to wages from the tip

pool before his wages were paid out.[27]  Moreover, the court noted that an employment agreement

does not control the rights of the parties if the agreement is contrary to law.[28]

        The reasoning in *Elkins* applies in this case.  Plaintiffs allege that Defendant is subject to

the overtime compensation provisions of the FLSA,[29] which require that employees be paid at

one and one-half times their regular rate for all work performed in excess of forty hours per

week.[30]  Thus, federal law entitles Plaintiffs to an increased rate of pay for their work at the

moment they begin performing work in excess of forty hours per week.[31]  Therefore, if Plaintiffs'

allegations are true, Defendant has withheld a portion of wages that Plaintiffs have lawfully

---

[25]*Id.* at 986.

[26]*See id.*

[27]*See id.*

[28]*See id.* (citing *Sweet v. Stormont-Vail Reg'l Med. Ctr.*, 647 P.2d 1274, 1278 (Kan. 1982)).

[29]Doc. 4-2 ¶ 22.

[30]29 U.S.C. § 207(a)(1).

[31]*See Elkins*, 704 P.2d at 986.

earned.[32]  Further, any employment agreement abrogating Plaintiffs' right to an increased rate of

pay for overtime work is contrary to federal law, rendering such an agreement invalid.[33]  For the

foregoing reasons, and in accordance with *Tarcha* and *Veale*, the Court finds that Plaintiffs'

KWPA claim cannot be dismissed on the basis that Plaintiffs do not allege a withholding of

"wages due" under the KWPA.

Defendant next argues that the FLSA may not form the legal basis for KWPA claims, and

that the District of Kansas cases to rule on the issue are in error.  As explained above, both the

*Tarcha* and *Veale* decisions allowed plaintiffs to sue under the KWPA for unpaid overtime

wages to which they were entitled under the FLSA.[34]  Similarly, in *Garcia v. Tyson Foods, Inc.*,

the court ruled that the FLSA could form the legal basis of the plaintiffs' KWPA claim, holding

that "to the extent it is determined at trial that [the employer] is required under the FLSA to

compensate its employees for certain activities or time periods for which [the employer] has not

been compensating employees, then the [plaintiffs] in this case may recover those amounts under

the KWPA."[35]  Defendant contends that each of these cases failed to cite *Elkins* — "the

---

[32]*See id.*

[33]*See Sweet*, 647 P.2d at 1278; 29 U.S.C. § 207(a)(1) ("Except as otherwise provided in this section, no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."); *see also Fuentes v. CAI Int'l, Inc.*, 728 F. Supp. 2d 1347, 1354 (S.D. Fla. 2010) (holding that parties cannot contract for lesser protections than those provided by the FLSA, which sets the lower limit for overtime compensation).

[34]*See Tarcha v. Rockhurst Continuing Educ. Ctr.*, No. 11-2487-KHV, 2012 WL 1998782, at *4 (D. Kan. June 4, 2012); *Veale v. Sprint Corp.*, No. Civ. A. 95-2379-GTV, 1997 WL 49114, at *2 (D. Kan. Feb. 3 1997); *see also Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 873 (N.D. Iowa 2008) (holding that the plaintiff may use the FLSA to establish the employer's violation of a state statute for not paying all wages due as well as the right to a certain amount of wages under the state statute).

[35]766 F. Supp. 2d 1167, 1187 (D. Kan. 2011).  In footnote 15, Judge Lungstrum noted that permitting plaintiffs who had not opted in to the FLSA class "to recover overtime wages from [the employer] under the KWPA is incompatible with the exemption provision of the [Kansas Minimum Wage and Maximum Hours Law

definitive state court opinion on the issue"[36] — which held that, in the context of a KWPA claim, "the provisions of the FLSA were to be considered only to determine whether [the employer] was empowered to withhold wages under [the FLSA]."[37]  Defendant interprets *Elkins* to mean that the FLSA can only be considered as a defense to the KWPA: "the only reason a court considers FLSA under KWPA is to determine if [the FLSA] is a defense for withholding wages."[38]

The Court reads *Elkins* differently.  *Elkins* did hold that in determining a plaintiff's rights under the KWPA, the FLSA should be considered "only to determine whether [the employer is] empowered to withhold wages under [federal law]"; however, it is evident from the context of the case that the court did not intend the FLSA to function only as a defense to the KWPA.[39] Rather, an administrative hearing officer in the Kansas Department of Human Resources found that the defendant restaurant violated the FLSA by (1) diverting an excessive amount of the plaintiff's tips into a tip pool, and (2) making payments from the tip pool to non-tipped employees.[40]  Because the tip pooling system did not conform to the requirements of the FLSA,

---

("KMWMHL")] and would undermine the integrity of Kansas' wage and hour statutory scheme as a whole."  *Id.* at n.15.  However, footnote 15 did not hold that plaintiffs can never seek damages under the KWPA for overtime "wages due" based on the FLSA; it merely explained that, for plaintiffs who had not opted in to the FLSA class, "the KMWMHL was the only potential legal basis for their overtime claims, and their employer was exempted from KMWMHL.  Thus, those plaintiffs were left with no legal basis to establish the amount of wages due under the KWPA."  *Tarcha*, 2012 WL 1998782, at *3.

[36]Doc. 11 at 1.

[37]*Elkins v. Showcase, Inc.*, 704 P.2d 977, 983 (Kan. 1985) (citing K.S.A. § 44-319 ("No employer may withhold, deduct or divert any portion of an employee's wages unless: (1) The employer is required or empowered to do so by state or federal law . . . .")).

[38]Doc. 11 at 2.

[39]*Elkins*, 704 P.2d at 983.

[40]*Id.* at 988.

the administrative officer found that the pooling system was invalid and that the defendant had therefore withheld "wages due" within the meaning of the KWPA.[41]  In affirming the administrative officer's ruling, the Kansas Supreme Court approved an analysis by which a KWPA violation was established on the basis of an FLSA violation, even though the plaintiff sued solely under the KWPA.[42]  Further, the *Elkins* court noted that the FLSA "had to be considered in order to determine if there had been a violation of the KWPA."[43]  In light of the entire opinion, this phrase seems to indicate that the FLSA may be considered in order to determine that a KWPA violation has occurred.[44]  Accordingly, the Court finds that *Tarcha, Veale*, and *Garcia* are not inconsistent with *Elkins.*

Defendant points out that the Kansas Minimum Wage and Maximum Hours Law ("KMWMHL"), which was passed four years after the enactment of the KWPA, contains its own penalty provision.[45]  According to Defendant, this indicates that the KWPA does not "incorporate" other statutes governing the substance of wages, since the Kansas Legislature would not have intended to codify a statutory redundancy when it passed the KMWMHL.

The Court disagrees.  First, the Court must interpret unambiguous statutory language

---

[41]*See id.* at 981-82.  Though the defendant in that case argued that the administrative hearing officer did not have authority to hear cases "where there is a claimed violation of the FLSA," *id.* at 983, the court ruled that the hearing officer had authority to consider the provisions of the FLSA to determine whether the defendant had withheld wages due under the KWPA.  *Id.* at 984.

[42]*See id.* at 988-89.

[43]*Id.* at 984.

[44]*See id.*

[45]*See* K.S.A. § 44-1211.

according to its plain meaning;[46] the language of the KWPA unambiguously requires that employers pay "all wages due" to employees, regardless of the various statutory compensation requirements to which employers may be subject.[47]  Second, notwithstanding the statute's plain meaning, legislative history does not indicate a congressional intent to exclude the application of the FLSA under the KWPA.  Though the KWPA was enacted thirty-five years after the FLSA, the Kansas Legislature did not exempt employers covered by the FLSA from the KWPA definition of "employer," though it could have easily done so.[48]  In fact, it did exclude such employers from the KMWMHL definition of "employer" when the latter statute was enacted.[49]  Moreover, for employers who "willfully" fail to pay all wages due to employees, the KWPA prescribes a penalty derived from the length of time the wages are unpaid in an amount of up to 100% of the unpaid wages.[50]  Such a penalty is not contained in the FLSA or the KMWMHL, and it is not illogical for the Kansas Legislature to impose an additional penalty on employers for willfully violating wage statutes to which they are subject.[51]  The Court therefore finds the reasoning expounded in the cited cases to be sound; the FLSA may form the legal basis for Plaintiffs' KWPA claim.

---

[46]*See Bowdry v. United Air Lines, Inc.*, 956 F.2d 999, 1002 (10th Cir. 1992) ("It is the practice of this Court to interpret statutory language according to its plain meaning.").

[47]K.S.A. § 44-314(a).

[48]§ 44-313(a).

[49]§ 44-1202(d).

[50]§ 44-315(b).

[51]The FLSA does impose an additional penalty on employers in an amount equal to an employee's unpaid overtime compensation.  29 U.S.C. § 216(b).  However, this penalty does not apply to unpaid portions of straight-time wages owed to employees, such as Plaintiffs allege in their Petition.  *See* Doc. 4-2 ¶ 11.  Thus, although the FLSA contains a penalty provision similar to that contained in the KWPA, the KWPA's penalty for willfully failing to pay "all wages due" to employees is more comprehensive.

11

Defendant finally argues that Plaintiffs may not state claims for relief under both the FLSA and the KWPA based on the same set of facts.  Defendant argues that *Elkins* prevents this action because it would trigger liability under both statutory frameworks, resulting in duplicative damages.  In Defendant's view, *Elkins* requires Plaintiffs to elect their remedy at the time of pleading, justifying dismissal of Plaintiffs' KWPA claim.

Defendant's argument is not supported by the relevant case law.  Unlike the instant case, *Elkins* did not involve claims under both the FLSA and the KWPA; the plaintiff's claim was brought pursuant to provisions of the KWPA only.[52]  Though *Elkins* explains the interplay between the two statutory frameworks in the context of a KWPA claim, the case does not hold that plaintiffs may not bring actions under both statutes in federal court.[53]  The case simply does not address the issue of whether plaintiffs may plead in the alternative, much less stand for the proposition that "Plaintiffs must elect their remedy at the time of pleading."[54]

The *Tarcha* decision, however, does address the issue of duplicative damages.[55]  In that case, as in this one, the plaintiffs sued for withheld overtime wages under both the FLSA and the KWPA.  The court refused to dismiss either claim, noting that "parties can state alternative claims in a complaint."[56]  This approach did not result in duplicative damages, as the court concluded that the plaintiffs would be required to elect between duplicative remedies "at some

---

[52]*Elkins v. Showcase, Inc.*, 704 P.2d 977, 983 (Kan. 1985).

[53]*See id.*

[54]Doc. 11 at 3.

[55]*See Tarcha v. Rockhurst Continuing Educ. Ctr.*, No. 11-2487-KHV, 2012 WL 1998782, at *3-4 (D. Kan. June 4, 2012).

[56]*Id.* at *3.

point later in th[e] litigation."[57]  The Court finds *Tarcha* persuasive: Fed. R. Civ. P. 8(d)(2) allows parties to plead in the alternative generally, and Defendant cites no authority holding to the contrary in the context presented here.

To the extent Defendant's argument is that the FLSA *preempts* Plaintiffs' KWPA claim, *Elkins* is equally unpersuasive.  As stated by the *Elkins* court, "the FLSA does not override or nullify nonconflicting state and local legislation passed for the purpose of protecting wage earners and to insure payment of their wages."[58]  The court explained further that state laws subjecting employers to more stringent compensation requirements do not conflict with more relaxed federal requirements; such state laws do not contravene the public policy underlying the FLSA, but complement it.[59]  Thus, *Elkins* was "not a preemption case," since the "wages due" provision of the KWPA complements the federal public policy expressed in the FLSA.[60]

Federal district courts have taken similar positions.  In *Bouaphakeo v. Tyson Foods, Inc.*, the Northern District of Iowa held that the FLSA did not preempt a duplicative state law claim under the Iowa Wage Payment Collection Law for not paying "all wages due its employees."[61] The court reasoned that the FLSA contains a "savings clause," which allows states to provide

---

[57]*Id.* at *4.

[58]*Elkins*, 704 P.2d at 983 (relying on 29 C.F.R.§ 531.26 (1984) ("Where [federal, state, and local] legislation is applicable and does not contravene the requirements of the [FLSA], nothing in the [FLSA] . . . should be taken to override or nullify the provisions of these laws)).

[59]*See Elkins*, 704 P.2d at 983-84 (citing *Doctors Hosp., Inc. v. Silva-Recio*, 429 F. Supp. 560, 561-62 (D.P.R. 1975)); *see also Maldonado v. Int'l Bus. Machs. Corp.*, 56 F.R.D. 452 (D.P.R. 1972) (holding that where a state law is more beneficial to an employee than the FLSA, the state law must apply).

[60]*See Elkins*, 704 P.2d at 983.

[61]564 F. Supp. 2d 870, 885-86 (N.D. Iowa 2008).

13

employees with greater benefits, or rights, than those provided in the FLSA.[62]  Though the savings clause does not specifically reference remedies, the court viewed the savings clause as an indication that the FLSA does not provide an exclusive remedy for its violations.[63]  Likewise, in *Robertson v. LTS Management Services L.L.C.*,[64] the Western District of Missouri ruled that duplicative state law claims for wages were not preempted by the FLSA, particularly in light of the savings clause.[65]  And, most persuasively, in *Tarcha*, the District of Kansas explicitly adopted the position that the FLSA does not preempt a KWPA claim even if it is based on the same facts as an FLSA claim.[66]  Though the court acknowledged that the FLSA has been held to preempt state law claims in many instances, the court pointed out that most of those claims were not brought "under statutes similar to the KWPA."[67]

In accordance with *Tarcha*, the Court finds that Plaintiffs' KWPA claim is not preempted by the FLSA.  Though some courts have held that the FLSA provides the exclusive remedy for its violations,[68] the FLSA's savings clause indicates otherwise: the Court believes the statute

---

[62]*See id.* at 884 (quoting 29 U.S.C. § 218(a) ("savings clause")).

[63]*Id.* (citing *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1151 (9th Cir. 2000) ("[T]he 'savings clause' indicates that [the FLSA] does not provide an exclusive remedy.")).

[64]642 F. Supp. 2d 922, 928 (W.D. Mo. 2008).

[65]*Id.*

[66]*See Tarcha v. Rockhurst Continuing Educ. Ctr.*, No. 11-2487-KHV, 2012 WL 1998782, at *3 (D. Kan. June 4, 2012).

[67]*Id.* (citing *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 193 (4th Cir. 2007) (finding state law contract, negligence, and fraud claims preempted); *Johnson v. Davis Sec., Inc.*, 217 F. Supp. 2d 1224, 1227-28 (D. Utah 2002) (finding an unjust enrichment claim preempted)).

[68]*See, e.g.*, *Anderson*, 508 F.3d at 194; *Tombrello v. USX Corp.*, 763 F. Supp. 541, 545 (N.D. Ala. 1991).

14

allows for alternative state statutory remedies.[69]  Particularly when such remedies afford employees greater protection than that provided by the FLSA, the Court finds that those remedies do not contravene the public policy underlying the federal statute, and are therefore not preempted.[70]  Moreover, to the extent Plaintiffs' FLSA and KWPA claims are redundant, Plaintiffs will be required to elect between duplicative remedies at some point later in this litigation.[71]  Accordingly, Defendant's Motion to Dismiss Count II of Plaintiffs' Petition is denied.

### B.  Breach of Contract and Quantum Meruit Claims

In addition to their FLSA and KWPA claims, Plaintiffs allege claims for breach of contract and quantum meruit.  Defendant moves to dismiss both claims, contending that Plaintiffs agreed to work for a weekly salary instead of hourly wages, and that Plaintiffs do not sufficiently allege the existence of the employment agreements referred to in paragraph 60 of the Petition.  Plaintiffs respond that their breach of contract and quantum meruit claims, "which seek equitable remedies under state law," should be dismissed only "*if* the KWPA claim is not dismissed and on the basis that equitable remedies are not available if there is an adequate remedy at law."[72]

The Court agrees that Plaintiffs' quantum meruit claim should be dismissed because an adequate remedy at law is available under the KWPA.  Defendant's Motion to Dismiss Count IV

---

[69]*See Williams v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1151 (9th Cir. 2000); *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 885-86 (N.D. Iowa 2008).

[70]*See Elkins v. Showcase, Inc.*, 704 P.2d 977, 983 (Kan. 1985); 29 C.F.R. § 531.26 (1984).

[71]*See Tarcha*, 2012 WL 1998782, at *4.

[72]Doc. 10 at 7 (emphasis in the original).

of Plaintiffs' Petition is therefore granted.

The Court also determines that Plaintiffs' breach of contract claim should be dismissed, though not on the same grounds as the quantum meruit claim: a claim for damages under a breach of contract theory does not seek an equitable remedy, but a remedy at law.[73]  Instead, the Court finds that Plaintiffs have failed to respond to Defendant's Motion to Dismiss Count III of Plaintiffs' Petition, and the Court grants the motion as uncontested pursuant to D. Kan. R. 7.4.[74] Nonetheless, the Court has considered Plaintiffs' breach of contract claim on its merits, and has concluded that dismissal is also appropriate under Fed. R. Civ. P. 12(b)(6).

Plaintiffs allege that they "entered into employment agreements whereby they were to be paid at an hourly rate."[75]  Though Plaintiffs do not specify the hourly rate at which they agreed to work, they claim Defendant's advertisements in Russian newspapers indicate a compensation rate of ten dollars per hour for dental lab technicians.[76]  Because Defendant failed to pay Plaintiffs for all the time worked on Defendant's behalf — presumably by not paying an hourly wage for Plaintiffs' "off-the-clock" work[77] — Plaintiffs allege they are entitled to damages for

---

[73]*See J.R. Simplot v. Chevron Pipeline Co.*, 563 F.3d 1102, 1115 (10th Cir. 2009).

[74]"Absent a showing of excusable neglect, a party or attorney who fails to file a responsive brief or memorandum within the time specified in D. Kan. Rule 6.1(d) waives the right to later file such brief or memorandum.  If a responsive brief or memorandum is not filed within the Rule 6.1(d) time requirements, the court will consider and decide the motion as an uncontested motion.  Ordinarily, the court will grant the motion without further notice."  D. Kan. R. 7.4.

[75]Doc. 4-2 ¶ 60.

[76]Plaintiffs attach to their Response to Defendant's Partial Motion to Dismiss (Doc. 10) a document which contains a Declaration of Sergei Rukavitsyn and a copy of a Russian newspaper advertisement (Doc. 10-2).  But the Court may only evaluate the allegations contained in the complaint when deciding a motion to dismiss. Nevertheless, the Court assumes all of Plaintiffs' factual allegations to be true, including Plaintiffs' allegation that Defendant advertises in Russian newspapers a pay rate of ten dollars per hour for dental lab technicians.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[77]*Id.* ¶¶ 11-12.

breach of the alleged employment agreements under a breach of contract theory.[78]

The Court finds that Plaintiffs' claim fails to meet the factual specificity required by *Twombly* and *Iqbal*. Specifically, Plaintiffs do not allege facts plausibly suggesting the existence of the employment agreements they claim have been breached.[79] While Plaintiffs are not required to directly plead every element of an employment contract,[80] the court must be able to reasonably infer the existence of some agreement to pay hourly wages where they allege such an agreement has been breached.[81] Plaintiffs' bare assertion that Defendant agreed to pay them by the hour does not suffice without further factual enhancement.[82] No allegation is made concerning whether Plaintiffs were ever paid by the hour in reality, the identity of the person who promised to pay Plaintiffs by the hour, whether such promise was written or oral, or any other circumstances or conduct that would give rise to the plausible inference the alleged agreements existed.[83] Even more conspicuously, Plaintiffs do not specify the hourly rate at

---

[78]*Id.* ¶¶ 63-64.

[79]*See Twombly*, 550 U.S. at 554.

[80]*See Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008); *cf. Scheid v. Farmer Candy Shops, Inc.*, 89 F.2d 434, 436 (6th Cir. 1988) (finding that a complaint must contain either direct *or inferential* allegations respecting all material elements of a claim).

[81]*See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (stating that the plaintiff must have "a reasonable likelihood of mustering factual support for *these* claims") (emphasis in the original).

[82]*See Twombly*, 550 U.S. at 556 ("[A] bare assertion of conspiracy will not suffice."); *Vargas v. BP Am., Inc.*, No. CIV. S-10-3130 LLK/GGH, 2011 WL 1601588, at *4 (E.D. Cal. 2011) (holding that the plaintiff's bare assertion that an implied agreement whereby he "would not be terminated except for good cause" was conclusory and insufficient).

[83]*See Vargas*, 2011 WL 1601588, at *4 ("Basic facts such as names or titles of relevant parties and the type of statements or conduct which is alleged to give rise to the mutual agreement should be set forth in order to give defendant fair notice of the grounds of the claim, and to make the existence of a mutual agreement plausible."); *see also Kastner v. Blue Cross & Blue Shield of Kan., Inc.*, 894 P.2d 909, 916 (Kan. Ct. App. 1995) (finding that allegations of factors such as written or oral negotiations, conduct of the parties, the usages of the business, and other circumstances surrounding the employment relationship might suggest the existence of an implied agreement).

which the alleged agreements provided they would be paid;[84] Plaintiffs' claim that Defendant advertises a rate of ten dollars per hour is not a sufficient substitute, since the advertisement was apparently subject to unadvertised conditions preventing the formation of a binding contract without further negotiation.[85]  As such, Plaintiffs' allegations concerning employment agreements for hourly wages do not rise above the speculative level.[86]  The Court therefore grants Defendant's Motion to Dismiss Count III of Plaintiffs' Complaint.

      **IT IS THEREFORE ORDERED BY THE COURT THAT** Defendant's Motion to Dismiss (Doc. 8) is **granted in part and denied in part**.  The motion is denied on Count II and granted on Counts III and IV.

      **IT IS SO ORDERED.**

Dated: <u>July 27, 2012</u>

                       <u>S/ Julie A. Robinson</u>
                       JULIE A. ROBINSON
                       UNITED STATES DISTRICT JUDGE

---

[84]*See Scheid*, 89 F.2d at 436 (positing that a complaint must contain allegations respecting all material elements of a claim).

[85]*See* Doc. 4-2 ¶ 7 ("In addition, Plaintiffs . . . received non-discretionary bonus compensation for meeting and exceeding certain production goals.").

[86]*See Twombly*, 550 U.S. at 545.